## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| REGINALD ERIC SPROWL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 7:18-cv-00446-LSC |
| | ) | |
| MERCEDES-BENZ U.S. | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum of Opinion

## I.    Introduction

Plaintiff Reginald Eric Sprowl ("Sprowl"), an African-American, brings this action against his former employer, Mercedes-Benz U.S. International, Inc. ("MBUSI").  In Counts I and II of his Amended Complaint, Sprowl asserts race discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981.  In Count III, Sprowl alleges that he was constructively discharged because of his race.

Presently before the Court are MBUSI's Motion for Summary Judgment (doc. 24) and Motion to Strike (doc. 36).  For the reasons stated below, MBUSI's

motion for summary judgment (doc. 24) is due to be GRANTED, and MBUSI's motion to strike (doc. 36) is due to be DENIED as MOOT.

## II.      Background[1]

On September 4, 2012, Sprowl began his employment with MBUSI as a maintenance member in MBUSI's Assembly Plant 2. During Sprowl's employment with MBUSI, Scotty Morris ("Morris") was his group leader and Scott McCall ("McCall") was his manager.

MBUSI periodically provides performance evaluations for its maintenance team members. The performance evaluations consist of two pages, the first of which provides team members with an overall numerical rating for their current performance in their existing job.  A score of 3.00 or higher indicates that the employee "Meets Expectations."   On the second page of the evaluation, maintenance team members are rated as to their potential for advancement

---

[1]      The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*,  17 F.3d 1386, 1400 (11th Cir. 1994).  The Court is not required to identify unreferenced evidence supporting a party's position.  As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties.  *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .") (internal quotations omitted).

("potential appraisal") for the next level as either "Ready" or "Needs Development."

Morris provided Sprowl's performance evaluations. For Sprowl's first performance evaluation, which took place in October 2013, Morris evaluated Sprowl's performance as Meets Expectations with a numerical grade of 3.00 ("Meets Expectations"). For Sprowl's potential appraisal, Morris evaluated Sprowl as "Needs Development." In November 2014, for his second performance evaluation of Sprowl, Morris again evaluated Sprowl's performance with a numerical grade of 3.00 and marked Sprowl's potential appraisal as "Needs Development."

In September 2015, Sprowl reported to Morris that fellow maintenance team member Ken Gamble ("Gamble") had made a racist comment. MBUSI investigated the incident and ultimately terminated Gamble's employment. Sprowl testified that several of the other maintenance team members blamed him for Gamble's firing. Specifically, Sprowl believed that Morris tried to turn people against him after he complained about Gamble, though Sprowl admitted that he never heard or saw Morris doing so, nor did anyone tell Sprowl that Morris did so. During the course of the EEOC's investigation of MBUSI, two of Sprowl's co-workers stated that Sprowl was treated differently after making the Gamble

complaint. Dennis Finnen ("Finnen"), who worked at MBUSI from 2014 to 2016, said that Sprowl was "shunned" by the Maintenance crew after making the Gamble complaint. A fellow team member, Cecil Agee ("Agee"), said that there was an "uproar" over Gamble's termination and that Sprowl was blamed. Agee also considered this incident to be the reason why Sprowl was not promoted to team leader.

In January 2016, MBUSI posted an opening for an Assembly maintenance team leader position. The team leader is the person responsible for directing work when the group leader is unavailable. As group leaders do not work the night shift, team leaders effectively act as group leaders during night shifts in the Assembly Shop. Additionally, the team leader position is considered a stepping stone to the group leader position. The January 2016 Team Leader Open Nomination Form listed the following as eligibility requirements for team leader promotions: (1) completion of the team leader assessment prior to signup; (2) no current corrective performance review; (3) ability to perform the essential functions of the position; (4) overall "S" on performance evaluation; (5) must be a MBUSI team member in Assembly Plant 2; and (6) must have been in current position for at least six months.

MBUSI evaluates team members who apply for a team leader promotion—and who meet the basic eligibility requirements—based on three separate criteria. MBUSI assigns the team members either 1 or 2 points for each criterion. These three criteria include the team member's assessment result (29 and above = 2 points, less than 29 = 1 point), the team member's potential appraisal for the next level (Ready = 2 points, Needs Development = 1 point), and the team member's peer input ratings (3.5 and above = 2 points, less than 3.5 = 1 point). Based on these three criteria, MBUSI designates team members as Ready 1 (overall receiving 6 points or 2 points in each of the three categories), Ready 2 (overall receiving 5 points or 2 points in two categories and 1 point in one category), or Needs Development (receiving 1 point in two or more categories). MBUSI fills the team leader position from Ready 1 and Ready 2 candidates. A candidate with an overall rating of Needs Development is considered by MBUSI as not eligible for consideration for promotion.

Sprowl signed up to be considered for the January 2016 team leader job posting. Sprowl also completed a team leader assessment form. However, when MBUSI solicited peer input for the candidates for the maintenance team leader position, Sprowl's name did not appear on the peer input sheet. Sprowl raised this issue with Morris, and MBUSI determined that it had mistakenly left Sprowl's

name off the peer input sheet. According to MBUSI's HR specialist Val Banta ("Banta"), Sprowl had been left off the list because she initially could not find a record that Sprowl had completed the team leader assessment. Banta contends this is because she originally looked up his information under the name Eric Sprowl while Sprowl's team leader assessment result had been listed under the name Reginald Sprowl. Once MBUSI discovered the mistake, it discarded the original peer input sheets and repeated the peer input process with Sprowl's name included.

At the time of the January 2016 team leader job posting, Sprowl did not have a current performance evaluation. Four white candidates for the maintenance team leader position also did not have current performance evaluations. As a result, Morris provided Sprowl and the four white candidates with updated performance evaluations. Sprowl received a performance evaluation of Meets Expectations with a numerical grade of 3.04 and potential appraisal score of Needs Development. While Morris rated two of the four white candidates with a potential appraisal score of Ready, the other two white candidates received a score of Needs Development.

Morris cited several reasons why he rated Sprowl as Needs Development on the potential appraisal. Morris testified that Sprowl needed to volunteer to fill in as team leader when necessary and fill out shift turn over reports. Morris also said

that Sprowl needed to gain more technical experience and experience on the other side of the shop.  Morris also felt that Sprowl did not demonstrate leadership qualities necessary for the team leader position.  However, Sprowl testified in his deposition that he did fill in as team leader and that he had participated in leadership programs, including a program in Germany.

Sprowl's peer input score, which his fellow team members supplied, was 3.4. Sprowl points out, however, that he received a higher overall performance evaluation score than two of the three white candidates selected for promotion. Based on the criteria MBUSI uses to evaluate eligibility for promotions, MBUSI assigned Sprowl only 1 point for peer input and 1 point for his potential appraisal. Accordingly, Sprowl was rated as Needs Development overall, and MBUSI determined that he was Not Ready for the January 2016 promotion to team leader.

Ultimately, Chris Jones ("Jones"), Brian Cooper ("Cooper"), and Chris Hearle ("Hearle") were selected to fill the available team leader positions.  All three of these individuals are white.  During the evaluation process, Cooper had been rated Ready 1, while Jones and Hearle were rated Ready 2.  According to Morris and McCall, these three candidates were selected as team leaders because they considered them to be the best qualified for the position (and more qualified than Sprowl).  The potential appraisals for Cooper and Hearle indicated that they

filled in for the team lead, completed all tasks a team leader would complete in a normal work week, showed a "desire to advance," and requested and accepted additional projects. The potential appraisal for Jones indicated that he filled in for the team leader and completed all of the shift turnover information, that he was capable of leading a team, and that he escalated when necessary.

In March 2016, Sprowl filed an EEOC charge based on MBUSI's failure to promote him to the January 2016 team leader position. After investigation, the EEOC issued Sprowl a Notice of Right to Sue, stating that the EEOC "found reasonable cause to believe that violations of the statute(s) occurred." (Doc. 16-1 at 2.) Both Morris and McCall testified that, at that time, they were not made aware that Sprowl had filed an EEOC charge.

In March 2017, Sprowl applied for another maintenance team leader position that had been posted. The March 2017 Team Leader Open Nomination Form listed the same eligibility requirements as the January 2016 Team Leader Open Nomination Form. Again, Sprowl's performance evaluation was not current, so Morris provided him with another performance evaluation. This time, Morris rated Sprowl as Meets Expectations on his performance evaluation with a grade of 3.08. Sprowl's potential appraisal score was again rated as Needs Development. Sprowl's peer input score for this job posting again fell below a rating of 3.5.

Because MBUSI only awarded Sprowl 1 point for the categories of potential appraisal and peer review, Sprowl's overall score placed him in the Not Ready class. Therefore, Sprowl was not eligible for the March 2017 team leader promotion. MBUSI selected Nate Davis ("Davis"), who is white and was rated Ready 1, to fill this team leader position. Again, Morris and McCall believed that Davis was the most qualified because of his leadership skills, his experience, and his escalation and problem-solving skills.

After Sprowl did not get the March 2017 promotion to team leader, he decided to move back to his home state of South Carolina. Sprowl secured a job with Sealed Air in South Carolina, and he started his employment at Sealed Air on June 26, 2017.

### III.    Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[2] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence

---

[2]    A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no

evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV.     Discussion

Absent direct evidence of racial discrimination or retaliation, such as specific statements made by the employer's representatives, a plaintiff may demonstrate circumstantial evidence of disparate treatment through the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).[3] Under this framework, the aggrieved employee creates a presumption of unlawful discrimination by first establishing a *prima facie* case of discrimination. *See Lewis v. Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The burden then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). If the employer proffers a

---

[3]     Because Sprowl has not offered any direct evidence of discrimination, the Court addresses his claims under the standards applicable to circumstantial evidence of discrimination. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

legitimate, nondiscriminatory reason, the burden returns to the employee to prove that the employer's reason is a pretext for unlawful discrimination. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008). Although the *McDonnell Douglas* framework is one way of showing discriminatory intent, it is not the only way to show discriminatory intent in a Title VII or § 1981 discrimination claim. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.*

## A. Race Discrimination[4]

### 1. *Prima Facie* Case

Sprowl argues that he was discriminated against based on his race when MBUSI failed to promote him to a team leader position in January 2016 and in March 2017. To establish a *prima facie* case for failure to promote, a plaintiff must show: (1) he is a member of a protected class, (2) he was qualified and applied for

---

[4] MBUSI argues that, as an initial matter, it is entitled to summary judgment on Sprowl's Title VII race discrimination claim concerning the March 2017 team leader promotion because Sprowl failed to exhaust his administrative remedies regarding that claim. When he filed his EEOC charge regarding the March 2017 promotion, Sprowl alleged only retaliation, not race discrimination. (*See* Doc. 16-1 at 3.) Sprowl appears to concede this point. (*See* Doc. 31 at 15.) However, as Sprowl points out, race discrimination claims brought under Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). There is no administrative exhaustion requirement for race discrimination claims brought under § 1981. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454–55 (2008). Accordingly, the Court will proceed to the merits of Sprowl's race discrimination claims concerning both the January 2016 and March 2017 team leader promotions.

the position at issue, (3) he was rejected, and (4) the position was filled by a person outside his protected class. *See Vessels v. Atlanta Ind. Sch. Sys.*, 208 F.3d 763, 768 (11th Cir. 2005) (per curiam) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

It is undisputed that Sprowl is a member of a protected class, that he applied for the positions and was rejected, and that the positions were filled by persons outside his protected class. MBUSI, however, contends that Sprowl has failed to show that he was qualified for the promotions at issue. Specifically, Morris testified that Sprowl needed to gain more technical experience and experience on the other side of the shop. Morris also felt that Sprowl did not demonstrate leadership qualities necessary for the team leader position. It is well settled that "only evidence that is *objectively verifiable* and either obtainable or within the plaintiff's possession" is considered at the *prima facie* stage. *Id.* at 769. Subjective criteria such as "leadership style . . . have no place in the plaintiff's initial prima facie case." *Id.* at 768–69. To be sure, the employer may "introduce its subjective evaluations of the plaintiff at the later stages of the *McDonnell Douglas* framework." *Id.* at 769. But to show that he was qualified for the position for purposes of the *prima facie* case, a plaintiff "need only show that he . . . satisfied an employer's objective qualifications." *Id.* Further, the plaintiff is not required to produce

evidence of the "relative qualifications" of other candidates at the *prima facie* stage: only that the plaintiff himself was qualified. *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998).

Although the parties' briefs focus on whether Sprowl satisfied MBUSI's three evaluation criteria—the assessment result, the potential appraisal, and the peer input ratings—the proper inquiry at the *prima facie* stage is whether Sprowl met the initial eligibility requirements listed on the Team Leader Open Nomination Form. For both the January 2016 and March 2017 promotions, the Team Leader Open Nomination Form listed the following six eligibility requirements for team leader promotions: (1) completion of the team leader assessment prior to signup; (2) no current corrective performance review; (3) ability to perform the essential functions of the position; (4) overall "S" on performance evaluation; (5) must be a MBUSI team member in Assembly Plant 2; and (6) must have been in current position for at least six months. MBUSI's HR Specialist, Val Banta, stated in her declaration that "[t]eam members who meet certain basic requirements" are subsequently evaluated based on the three criteria described above.

### a. January 2016 Promotion

Sprowl has shown that he was qualified for the January 2016 promotion for purposes of satisfying his *prima facie* case. First, it is undisputed that Sprowl

"[met] the stated written job requirements identified in the [team leader] job description." (Doc. 31 at 11, ¶ 25.)   In response to this statement of fact, MBUSI merely "[c]larified" that "[Sprowl] was not qualified . . . for TL promotion because he was assigned only 1 point for peer input and potential appraisal." (Doc. 35 at 2, ¶ 25.)   Further, Sprowl presented unrebutted deposition testimony that he completed the team leader assessment prior to sign up; that he had no corrective performance review; that he had an overall "S" on his performance evaluation; that he was a team member in Assembly Plant 2; and that he was in his current position for at least six months.   Finally, it is undisputed that "[t]eam members who meet certain basic requirements" are subsequently evaluated based on MBUSI's three evaluation criteria, and that MBUSI evaluated Sprowl for the January 2016 promotion under its three evaluation criteria.   Because MBUSI evaluated Sprowl for the promotion, Sprowl must have satisfied all six "basic requirements" listed on the Team Leader Open Nomination Form.   Therefore, Sprowl has sufficiently established that he was qualified for the January 2016 promotion for the purposes of satisfying his *prima facie* case.

### b.  March 2017 Promotion

Sprowl has also shown that he was qualified for the March 2017 promotion for purposes of satisfying his *prima facie* case.   Just as with the January 2016

promotion, Sprowl satisfied all six "basic requirements" listed on the Team Leader Open Nomination Form for the March 2017 promotion. Therefore, Sprowl has sufficiently established that he was qualified for the March 2017 promotion for the purposes of satisfying his *prima facie* case.

### 2. Legitimate, Nondiscriminatory Reasons

Once the plaintiff makes out a *prima facie* case, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 253). The burden at this stage "is exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). It is merely a burden of production, not a burden of proof. *Id.*

#### a. January 2016 Promotion

MBUSI has articulated several legitimate and nondiscriminatory reasons for its decision not to promote Sprowl in January 2016. Specifically, Morris testified that Sprowl did not demonstrate the leadership qualities necessary for the team leader position, and also that Sprowl needed to gain more technical experience as well as experience on the other side of the shop. Further, Morris and McCall testified that they selected Jones, Cooper, and Hearle as team leaders because they (Morris and McCall) considered Jones, Cooper, and Hearle to be the best qualified for the position. Jones was more qualified than Sprowl because he filled in for the

team leader, completed shift turnover reports, and escalated when necessary. Further, Hearle and Cooper were more qualified because they filled in for the team lead, completed all tasks a team leader would complete in a normal work week, showed a "desire to advance," and requested and accepted additional projects. Jones and Hearle were also more qualified because they each received only one score of "1" as part of MBUSI's three-part evaluation. They each received a "1" in the potential appraisal category, a category scored by MBUSI itself. By contrast, Sprowl scored a "1" in both the potential appraisal and peer input categories. Jones, Hearle, and Cooper, on the other hand, were more qualified because they each received a score of "2" in the peer input category, which depends on ratings given by their peers, *not* MBUSI. In sum, Sprowl received a lower score than Jones, Hearle, and Cooper in the category determined by his peers, and Sprowl received the same score as Jones and Hearle in the category determined directly by MBUSI.

Therefore, MBUSI has proffered legitimate, nondiscriminatory reasons for its decision not to promote Sprowl in January 2016.

### b. March 2017 Promotion

MBUSI has also articulated legitimate and nondiscriminatory reasons for its decision not to promote Sprowl in March 2017. MBUSI states that Nate Davis, a

white male, was selected for the promotion because Davis was the most qualified for the position. Specifically, Davis "showed better leadership skills, had filled in on more occasions as team leader, had more experience filling out shift turnover reports, had better technical skills, escalated and problem solved better, and had more experience throughout the entire assembly shop." (Doc. 24 at 16, ¶ 81.) Further, Davis received scores of "2" in the potential appraisal and peer input categories, while Sprowl received scores of "1" in both categories. Therefore, MBUSI has proffered a legitimate, nondiscriminatory reason for its decision not to promote Sprowl in March 2017.

### 3. Pretext

Once the employer articulates a legitimate, nondiscriminatory reason for its decision, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reason [is] a pretext for discrimination." *Alvarez*, 610 F.3d at 1264. "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence,'" *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Burdine,* 450 U.S. at 256), such that a rational trier of fact could disbelieve the employer's proffered nondiscriminatory reason, *Wilson v. B/E Aerospace, Inc.*, 376

F.3d 1079, 1088 (11th Cir. 2004). "When a plaintiff chooses to attack the veracity of the employer's proffered reason, the inquiry is limited to whether the employer gave an honest explanation of its behavior." *Kragor*, 702 F.3d at 1310–11 (internal quotation marks omitted). A *prima facie* case plus sufficient evidence of pretext may permit the factfinder to find unlawful discrimination, making summary judgment inappropriate. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

### a. January 2016 Promotion

Sprowl has failed to present sufficient evidence to rebut MBUSI's claim that it promoted three white candidates over him because those candidates were better qualified. To successfully challenge an employer's explanation that it promoted the better qualified candidate, the plaintiff must show that "the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (per curiam) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *overruled in part by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006)); *see also Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006) (approving of this language from *Cooper*). Further, the

plaintiff cannot prove pretext by merely arguing or even showing that he was better qualified than the individual who received the promotion: rather, the plaintiff must show that the "defendant's employment decisions . . . were in fact motivated by race." *Springer*, 509 F.3d at 1349.

Sprowl insists that he was more qualified for the promotion than his evaluations suggest. As an initial matter, this Court notes that Sprowl had received potential appraisals of Needs Development on two occasions prior to the Gamble incident, which helps dispel any inference that Sprowl was rated Needs Development on this occasion based upon his race. Further, Sprowl has failed to present evidence that the chosen candidates—Jones, Cooper, and Hearle—were *not* qualified or that they were less qualified than Sprowl. Sprowl avers that Jones, Cooper, and Hearle received "identical cut and paste performance assessments" before they were selected. However, Sprowl does not quarrel with the substance of their assessments, let alone present evidence that any of the assessments were false.

Sprowl further asserts that he received a higher score on his performance assessment than two of the white candidates selected for promotion (Jones and Hearle), and that this is evidence that MBUSI's reasons for not promoting him are pretextual. This Court is not persuaded by Sprowl's argument. The performance

assessment is just one part of MBUSI's three-part evaluation, and Jones and Hearle each received higher scores than Sprowl on the other two parts of the evaluation: potential appraisal and peer input. Cooper, the other white candidate who was selected, had a *higher* performance assessment score than Sprowl, and Sprowl does not argue—let alone prove—that any of facts relied on by MBUSI in calculating Cooper's score were false or unworthy of credence.

The evidence in the record shows that MBUSI "gave an honest explanation of its behavior" when it promoted Jones, Hearle, and Cooper because they were the most qualified candidates. *See Kragor*, 702 F.3d at 1310–11. Jones's potential appraisal indicates that he filled in for the team leader, completed shift turnover reports, and escalated when necessary. Sprowl failed to present any evidence that these descriptions of Jones are false. Further, Hearle's and Cooper's potential appraisals indicate that they filled in for the team lead, completed all tasks a team leader would complete in a normal work week, showed a "desire to advance," and requested and accepted additional projects. Sprowl failed to present any evidence that these descriptions of Hearle and Cooper are false. And Sprowl presented no evidence that *he* had completed all tasks a team leader would complete in a normal work week, showed a "desire to advance," or requested and accepted additional projects—characteristics of both Hearle and Cooper. Therefore, Sprowl has failed

to undermine MBUSI's explanation that it promoted Jones, Hearle, and Cooper because they were the best qualified for the team leader position. It follows that Sprowl cannot show that the disparities between the successful candidates' qualifications and his own were so great that no reasonable person could have chosen those candidates over himself. *See Springer*, 509 F.3d at 1349.

This Court acknowledges that Sprowl has presented *some* evidence that would allow a rational factfinder to disbelieve some of MBUSI's proffered legitimate, nondiscriminatory reasons for not promoting him in 2016. Specifically, Morris had cited Sprowl's lack of leadership skills as a reason why Sprowl was deemed Not Ready for the January 2016 promotion, including that Sprowl needed to fill in as team leader. However, Sprowl testified in his deposition that he had filled in as team leader and that he had participated in leadership programs, including a program in Germany.

Nevertheless, Sprowl has still failed to show that the disparities between the successful candidates' qualifications and his own were so great that no reasonable person could have chosen those candidates over Sprowl. *See Springer*, 509 F.3d at 1349. Therefore, even construing the facts in the light most favorable to him, Sprowl has failed to show that MBUSI's proffered reasons for promoting three white candidates in January 2016 was a pretext for race discrimination.

Regarding the March 2017 promotion, Sprowl does not argue—let alone prove—that he was more qualified than Nate Davis, the white employee who was selected for the promotion. Instead, Sprowl avers that two other female employees who sought the promotion were also deemed Not Ready for the promotion. Sprowl further avers that he expressed his displeasure with the evaluation process to MBUSI, and that one of the female employees also expressed frustration with the allegedly subjective standards used by MBUSI in its evaluation process. It appears that Sprowl presents this evidence in an attempt to cast MBUSI as discriminatory in general: in other words, that MBUSI discriminates based on both race and gender, to the detriment of black and female employees and to the benefit of white male employees. However, this Court is not convinced that evidence of MBUSI's alleged gender discrimination, even if true, is relevant to Sprowl's own claim that he was discriminated against based on his race.

Further, Sprowl fails to argue or present any evidence to undermine MBUSI's claim that it promoted Davis over himself because Davis "showed better leadership skills, had filled in on more occasions as team leader, had more experience filling out shift turnover reports, had better technical skills, escalated and problem solved better, and had more experience throughout the entire

assembly shop." (Doc. 24 at 16, ¶ 81.) It appears that MBUSI "gave an honest explanation of its behavior" when it promoted Davis because he was the most qualified candidate. *See Kragor*, 702 F.3d at 1310–11. In sum, even construing the facts in the light most favorable to him, Sprowl has failed to show that the disparities between Davis's qualifications and his own were so great that no reasonable person could have chosen Davis over Sprowl. *See Springer*, 509 F.3d at 1349.

No reasonable jury could conclude that either (1) MBUSI's decision to promote Jones, Hearle, and Cooper over Sprowl in 2016 or (2) MBUSI's decision to promote Davis over Sprowl in 2017 was based upon unlawful race discrimination. Therefore, MBUSI is entitled to summary judgment on Sprowl's race discrimination claim (Count I).

**B.    Retaliation**

Next, Sprowl claims that MBUSI's failure to promote him to the team leader position in January 2016 and in March 2017 was unlawful retaliation for Sprowl's complaining about Gamble's racial slur and for filing discrimination charges with the EEOC. A plaintiff successfully establishes a *prima facie* case of retaliation if he demonstrates that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected

activity and the adverse employment action. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). MBUSI argues that Sprowl cannot meet his initial burden under *McDonnell Douglas* because he cannot establish a causal connection between his statutorily protected activity and the alleged adverse employment action.

One way a plaintiff can establish a causal connection is by showing that the employer knew of his statutorily protected activity and there was a close temporal proximity between this awareness and the adverse employment action. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (stating that the temporal proximity must be "very close" and concluding that a 20-month delay was too long). A claim of retaliation fails as a matter of law "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation." *Higdon*, 393 F.3d at 1220. The plaintiff may also prove causation by showing that the desire to retaliate was the "determinative influence" on the defendant's decision to take an adverse action. *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1337 (11th Cir. 2013).

Sprowl points to his complaint about Gamble and the filing of his EEOC charge as satisfying the protected activity prong of his *prima facie* case. It is

undisputed that Sprowl reported Gamble's racist comment in September 2015, applied for the first team leader job posting in January 2016, and was subsequently denied the promotion to team leader. Without other evidence of causation, a three-to four-month passage of time between protected activity and an adverse action is too long for the purposes of establishing a causal link. *See Clark*, 532 U.S. at 273–74. Thus, Sprowl cannot rely on temporal proximity alone to establish a causal connection between his internal complaint, which was made in September 2015, and MBUSI's first failure to promote him to a team leader position, which occurred sometime after January 2016.

Standing alone, the temporal gap between Sprowl's complaint and MBUSI's failure to promote him to the second team leader position also does not support a finding of causation. MBUSI posted this team leader position in March 2017. Thus, well over a year passed between the filing of Sprowl's internal complaint and MBUSI's failure to promote Sprowl to this position. The temporal proximity between these two events is far too attenuated to establish a causal link, in the absence of other evidence of causation.

Nor is the temporal proximity between Sprowl's filing of his EEOC charge and MBUSI's failure to promote him to the second team leader position sufficiently close to establish causation on its own. Sprowl filed his EEOC charge

in March 2016, which was approximately one year prior to the second team leader position job posting. Thus, without more, the length of time between these two events fails to establish causation. Even if the temporal proximity had been closer, close timing, without evidence of decisionmaker knowledge of the protected activity, is insufficient to demonstrate causation. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798–99 (11th Cir. 2000). Here, Morris and McCall, the relevant decisionmakers with respect to the team leader promotions, testified that they did not learn of Sprowl's EEOC charge until after the filing of this lawsuit. Sprowl does not dispute this testimony. Accordingly, Sprowl has failed to establish a causal link between the filing of his EEOC charge and MBUSI's failure to promote him when the second team leader position became available.

Nonetheless, Sprowl argues that Morris's knowledge of his complaint about Gamble, combined with what he asserts is other relevant evidence, sufficiently establishes causation for the purposes of his *prima facie* case of retaliation with respect to both instances of MBUSI's failure to promote him to the team leader position. According to Sprowl, the following is sufficient to create a question of material fact on the issue of causation: (1) evidence that MBUSI did not initially consider Sprowl for the January 2016 team leader position due to confusion about his name; (2) the fact that Morris marked Sprowl's performance as Needs

Development when he issued Sprowl's potential appraisal; (3) evidence that, after Sprowl complained about Gamble, Morris did not conduct Sprowl's annual performance evaluations close to the date of the anniversary of his hire as required; (4) evidence that, although Sprowl received similar performance assessments to two white employees who had not made complaints about racism, the two white employees received potential appraisals that rated them ready for promotion; and (5) the fact that during the EEOC's investigation into this matter a witness reported that MBUSI employees blamed Sprowl for Gamble's termination and that this witness believed that Sprowl's complaint is what prevented him from being promoted to team leader. (*See* Doc. 31 at 23–25.)

Assuming, *arguendo*, that Sprowl had been able to establish a *prima facie* case of retaliation, the burden of production would then shift to MBUSI to produce a legitimate, nondiscriminatory reason for failing to promote Sprowl to team leader. As stated above in Part IV.A.2, MBUSI's explanation for its promotion decisions— that it chose the most qualified candidates to fill the team leader positions—meets this burden.

Accordingly, the burden shifts back to Sprowl to show that MBUSI's proffered reason is mere pretext for unlawful retaliation. A plaintiff may succeed in demonstrating pretext either "directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. In determining whether the proffered reason is pretextual, courts are not in the "business of adjudging whether employment decisions are prudent or fair," but instead, are solely concerned with "whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

Even if Sprowl did satisfy his *prima facie* case, Sprowl has nonetheless failed to produce sufficient evidence of pretext to survive summary judgment on his retaliation claim. First, although MBUSI did not initially consider Sprowl for the January 2016 team leader position due to confusion about his name, MBUSI fixed the problem, and ultimately Sprowl was considered for the position. Second, although Morris marked Sprowl's performance as Needs Development when he issued Sprowl's potential appraisal, Sprowl had received potential appraisals of Needs Development on two occasions prior to complaining about Gamble, which helps dispel any inference that Sprowl was rated Needs Development on this occasion in retaliation for his complaint. Third, although Morris did not timely conduct Sprowl's annual performance evaluations after Sprowl complained about Gamble, it is undisputed that Morris also did not timely conduct performance

evaluations for four white candidates. And, in any event, Morris gave Sprowl updated performance evaluations so that Sprowl was considered for both promotions.

Fourth, although Sprowl received similar performance assessments to two white employees who had not made complaints about racism, and those two white employees received potential appraisals that rated them Ready for promotion, these facts do not give rise to an inference of retaliatory animus. The performance assessment is based on separate criteria from the potential appraisal: the former considers the employee's current job performance, while the latter considers whether the employee has the requisite skills for a promotion. To be sure, some employees who have demonstrated good performance in their current jobs also have the requisite skills for a promotion. But good performance in one's current job does not necessarily mean that one is ready for a promotion. Therefore, no retaliatory animus can be inferred from MBUSI's conclusions that (1) Sprowl had performed well in his current job but had not demonstrated the requisite skills for a promotion, and (2) two white candidates had performed well in their current jobs and had also demonstrated the requisite skills for a promotion. Finally, the witness's report to the EEOC that MBUSI employees blamed Sprowl for Gamble's termination is purely speculative and, therefore, insufficient grounds to conclude

that MBUSI acted out of retaliatory animus. Similarly, the witness's belief that Sprowl's complaint prevented him from being promoted to team leader is purely speculative and, therefore, insufficient grounds to conclude that MBUSI acted out of retaliatory animus.

Further, just as with his discrimination claim, Sprowl has failed to rebut MBUSI's nonretaliatory reason for not promoting him: that MBUSI chose the employees who were the most qualified. For all the same reasons discussed in Part IV.A.3, *supra*, Sprowl has neither shown that MBUSI's proffered reason is false nor that the real reason was unlawful retaliation as it pertains to either the January 2016 or the March 2017 promotions.

No reasonable jury could conclude that MBUSI's failure to promote him in either January 2016 or March 2017 was motivated by unlawful retaliatory animus. Therefore, MBUSI is entitled to summary judgment on Sprowl's retaliation claim (Count II).

## C.  Constructive Discharge

Sprowl's final claim is a claim for constructive discharge. "A constructive discharge occurs when a discriminatory employer imposes working conditions that are '*so intolerable* that a reasonable person in [the employee's] position would have been compelled to resign.'" *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974,

977 (11th Cir. 2003) (emphasis added) (quoting *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997)); *see also Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016). Courts are to evaluate the plaintiff's working conditions under an objective standard. *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004). "Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992)).

Sprowl alleges that his working conditions were intolerable because of (1) two instances in which MBUSI declined to promote Sprowl to team leader; and (2) the fallout from the firing of Gamble, for which Sprowl alleges that he was blamed. As explained earlier, Sprowl reported Gamble for using a racial slur, and Gamble was subsequently fired. Sprowl testified that he believes that Morris tried to turn people against him after he complained about Gamble, though Sprowl admits that he never heard or saw Morris doing so, and no one ever told him that Morris did so. However, Dennis Finnen, who worked at MBUSI from 2014 to 2016, said that Sprowl was "shunned" by the maintenance crew after the Gamble incident. Another team member, Cecil Agee, said that there was an "uproar" over Gamble's termination and that Sprowl was blamed.

Even construing the facts in the light most favorable to Sprowl, no reasonable person in Sprowl's position would find Sprowl's working conditions so intolerable that they felt compelled to resign. The Eleventh Circuit requires more from the plaintiff to overcome summary judgment on a constructive discharge claim. For example, in *Poole*, the Eleventh Circuit found that a genuine issue of material fact existed as to the plaintiff's age discrimination claim because of the following working conditions: the defendant refused to process the plaintiff's worker's compensation claim for over a year; the defendant told the plaintiff that she was "as old as [defendant's] mother" and told others that plaintiff "was too old, had too many lines in her face, and too many gray hairs"; the plaintiff was moved to a new office with no desk or computer; the defendant instructed other employees not to speak to the plaintiff; and the plaintiff's "duties and responsibilities were reduced to virtually nothing." 129 F.3d at 551–52. Given that the she was "[s]tripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers," the plaintiff had presented sufficient evidence that a reasonable person might find her working conditions intolerable. *Id.* at 553.

Sprowl has failed to meet the onerous burden of proving constructive discharge at the summary judgment stage. Unlike in *Poole*, there is no evidence

here that MBUSI knew about or condoned other employees' decisions to "shun" Sprowl or blame Sprowl for the Gamble incident. Sprowl cites his belief that Morris tried to turn other employees against him; however, this is pure speculation, as Sprowl admits he never saw, heard, or was told about Morris doing this. Similarly, the statements of Fennin and Agee fail to show that MBUSI knew about or condoned employees' alleged mistreatment of Sprowl following the Gamble incident. And unlike the plaintiff in *Poole*, Sprowl cannot point to any direct statements of racial animus, elimination of duties or responsibilities, or any other conditions that are "so intolerable that a reasonable person in [Sprowl's] position would have been compelled to resign." *Fitz*, 348 F.3d at 977. In sum, MBUSI's failure to promote Sprowl over better qualified candidates on two occasions, combined with unpleasant treatment from co-workers that was not condoned by the employer, are insufficient to allow Sprowl's constructive discharge claim to survive summary judgment.

Therefore, Sprowl's constructive discharge claim (Count III) is due to be dismissed.

## V. Conclusion

For the reasons stated above, MBUSI's Motion for Summary Judgment (doc. 24) is due to be GRANTED. MBUSI's Motion to Strike (doc. 36) is due to

be DENIED as MOOT.[5]  An Order consistent with this Opinion will be entered

contemporaneously herewith.

      **DONE** and **ORDERED** on September 20, 2019.


                                      L. Scott Coogler
                              United States District Judge

199335

---

[5]     MBUSI's Motion to Strike objected to the use of the EEOC's Letter of Determination ("EEOC Letter") and the EEOC's Investigator Memorandum ("EEOC Memorandum").  Even if this Court concluded that either the EEOC Letter or the EEOC Memorandum were admissible, it would not change the results of this Opinion.  Therefore, the Motion is denied as moot.